United States District Court
Northern District of Alabama
SOUTHERN Division



03 SEP -3 AM 8: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SUSAN MOORE, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] CV02-CO-01352-S | |
| | ] | |
| ANGELA THOMAS, | ] | |
| | ] | |
| Defendant(s). | ] | |

**ENTERED**

SEP 0 3 2003

**Memorandum of Opinion**

## I.   Introduction.

Presently before the court is a motion to dismiss the second amended complaint, filed by defendant Fairfield Public Housing Authority ("PHA"), the only remaining defendant in this action, on August 7, 2003 [Doc. # 35].[1]  The issues therein have been briefed by the parties and are now ripe for decision.  Upon due consideration, the motion will be granted in all respects.

## II.   Facts.

Plaintiffs Susan Moore, Margo Hilliard, Gina Augustus, Brendolyn Means, Emma Hubbard, and Venus Webster, as putative class representatives of similarly situated individuals (collectively, "the plaintiffs"), filed this action against defendant PHA and assert claims under 42 U.S.C. §1983 for alleged violations of the Housing Act, 42 U.S.C. §1437, which governs the Section 8 housing assistance program [Doc. # 33, Second Am. Compl.].

---

[1] Plaintiffs, with leave of court, amended their complaint on July 25, 2003, to state claims only against defendant Fairfield Public Housing Authority.  Therefore, the court's August 4, 2003, order dismissed all individual defendants, as plaintiffs had abandoned those claims.



The plaintiffs further assert violations of the equal protection clause of the Fourteenth Amendment. [Id.]

Under the Section 8 program of 42 U.S.C. §1437, Housing and Urban Development (HUD) enters into annual contribution contracts with Public Housing Authorities whereby the PHAs make subsidy payments (through vouchers given to the families) to owners of existing dwelling units on behalf of eligible low income families. PHAs have the responsibility of accepting applications from low income persons, determining their eligibility, and maintaining a waiting list of those eligible applicants all according to various statutes, rules, and regulations.

The plaintiffs' claims are founded upon alleged manipulation of the PHA's waiting list in the following ways: rearranging the order of the waiting list so that families lower on the list, or not on the list at all, were given vouchers before others higher on the list; wrongfully terminating applicants from the waiting list to accommodate favored applicants; and not following appropriate procedures in obtaining new applicants, but rather filling vacancies on the list with applicants who were not entitled to the particular position. The plaintiffs allege that this manipulation of the waiting list was in violation of 42 U.S.C. §1437. The plaintiffs aver that 42 U.S.C. §1983 is the proper vehicle to use to grant relief of the alleged violations of 42 U.S.C. §1437.

The second amended complaint further alleges that the plaintiffs' right to equal protection was violated when other families were given vouchers without going through the eligibility determination process and/or ever being placed on the waiting list in the proper

position. As a result of the foregoing, the plaintiffs allege claims for injunctive relief and monetary damages pursuant to 42 U.S.C. §1983.

**III.     Standard.**

The defendant argues that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the second amended complaint fails to state a claim upon which relief may be granted. It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To state a claim under 42 U.S.C. §1983, "a plaintiff must allege facts showing that the defendant's acts or omissions, done under color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or the laws of the United States." Emory v. Peeler, 756 F.2d 1547, 1554 (11th Cir. 1985). In analyzing the complaint, the court must accept the facts as alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

**IV.     Discussion.**

    **A.     An unambiguously conferred right.**

The plaintiffs claim that they are entitled to relief under 42 U.S.C. §1983 for alleged violations of the Section 8 program existing under the Housing Act, 42 U.S.C. §1437. Section 1983 provides a federal remedy for violations of not only the Constitution, but for violations of federal statutes as well. Maine v. Thiboutot, 448 U.S. 1 (1980). However, a plaintiff must first show that the statute which has allegedly been violated actually conferred

a private right of action. Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002). Even if a plaintiff establishes that a federal statute does confer an individual right, only a rebuttable presumption exists that the right is enforceable under §1983. Smith v. Robinson, 468 U.S. 992, 1005, n.9 (1984).

The Supreme Court utilizes a three-part test to ascertain whether a particular statutory provision gives rise to a private right of action. First, Congress must have intended that the provision benefit the plaintiff. Second, the plaintiff must establish that the right supposedly given in the statute is definite enough to make enforcement feasible. Third, the provision conferring the alleged right must be in mandatory, as opposed to precatory, terms. Blessing v. Freestone, 520 U.S. 329, 340-41(1997). The Court's later discussion of the first requirement makes it clear that "only unambiguously conferred rights, as distinguished from mere benefits or interests, may be enforced under §1983." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).

Plaintiffs' second amended complaint points to alleged violations of a number of provisions to the Housing Act[2] as well as federal regulations relating to Housing and Urban Development (HUD).[3] Plaintiffs aver that they are entitled to enforce provisions of the Housing Act and the accompanying HUD regulations through the use of 42 U.S.C. §1983.

---

[2] Housing Act, 42 U.S.C. §1437d(c)(4)(2000) (compliance with procedures for sound management), 1437f(o)(3) (rent amount may not exceed 40% of family's monthly adjusted income), 1437n (eligibility for assisted housing).

[3] HUD Section 8 Regulations, 24 C.F.R. §§982.201(b) (income eligibility), 982.202(d) (admission policy), 982.204(a),(b) (administration and organization of waiting list), 982.207(c)-(e) (selection among families with preference, preference for higher-income families, verification of selection method).

Specifically, the plaintiffs cite <u>Wright v. City of Roanoke Redevelopment and Hous. Auth.</u>, 479 U.S. 418 (1987), for the proposition that Congress has not foreclosed such a remedy.

In <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 451 U.S. 1, 28 (1981), the Supreme Court rejected a claim that the Developmentally Disabled Assistance and Bill of Rights Act of 1975 conferred enforceable rights when it stated, "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." The Supreme Court also stated that unless Congress spoke "with a clear voice " and exhibited an "unambiguous" intent to confer a private cause of action, federal funding legislation could not be the basis for §1983 actions. <u>Id.</u>, at 17.

Only twice since <u>Pennhurst</u> has the Supreme Court found spending legislation to give rise to a private right of action. In <u>Wright</u>, the Court analyzed a rent-ceiling provision of the Public Housing Act and found that Congress intended to confer entitlements "sufficiently specific and definite to qualify as enforceable rights under <u>Pennhurst</u>. <u>Gonzaga</u>, 536 U.S. at 280 (quoting <u>Wright</u>, 496 U.S. at 432). In <u>Wilder v. Virginia Hosp. Assoc.</u>, 496 U.S. 498 (1990), the Court examined a reimbursement provision of the Medicaid Act and allowed a §1983 action on the ground that the provision, like the one in <u>Wright</u>, explicitly demonstrated Congress' intent for private enforcement. <u>Id.</u> at 281( See <u>Wilder</u>, 496 U.S. 498, 522-23).

The Supreme Court, however, has acknowledged its own movement from inferring enforceable rights from spending legislation to not permitting "anything short of an

unambiguously conferred right to support a cause of action under §1983." Gonzaga Univ.

v. Doe, supra, at 281-83 (2002).  "Accordingly, where the text and structure of a statute

provide no indication that Congress intends to create new individual rights, there is no

basis for a private suit, whether under §1983 or under an implied right of action." Id., at 286.

As such, this court declines to find such mandatory terms creating an individualized

right of enforcement as articulated in Blessing in the provisions specified by the plaintiffs

in 42 U.S.C. §1437 and its accompanying HUD regulations.[4]  These provisions merely state

policies and guidelines to be followed by PHAs and the Secretary of Housing and Urban

Development  but do not, however, confer upon the plaintiffs an individualized right of

action.  The Supreme Court has given examples of what does constitute "rights-creating"

language:

> Title VI provides: "*No person* in the United States *shall* ... be subjected to
> discrimination under any program or activity receiving Federal financial
> assistance" on the basis of race, color, or national origin.  42 U.S.C.
> §2000d(1994 ed.) (emphasis added).  Title IX provides: "*No person* in the
> United States *shall*, on the basis of sex ... be subjected to discrimination
> under any education program or activity receiving Federal financial
> assistance." 20 U.S.C. §1681(a) (emphasis added).  Where a statute does not
> include this sort of explicit "right- or duty-creating language" we rarely
> impute to Congress an intent to create a private right of action.

Gonzaga Univ. v. Doe, 536 U.S. 273, 284, n.3 (2002).  See  Cannon v. Univ. of Chicago, 441

U.S. 677, 690, n.13 (1979)(listing provisions).

The specified provisions of the Housing Act and the accompanying HUD regulations

do not include similar "rights or duty creating" language.  Therefore, the motion to dismiss

---

[4] Specified provisions, supra note 2 and 3.

is due to be granted as to plaintiffs' claim asserted against defendant PHA for alleged violation of the Housing Act and HUD regulations.

**B.      Plaintiffs' equal protection claim.**

The plaintiffs' second count of the second amended complaint further alleges a §1983 claim for violation of the equal protection clause of the Fourteenth Amendment.[5] The crux of plaintiffs' argument is that they were intentionally discriminated against in favor of persons who paid bribes to the staff of defendant PHA.

The purpose of the equal protection clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562 (2000). Therefore, the equal protection clause only applies where there is purposeful or intentional discrimination. Additionally, an individual bringing an action under the equal protection clause "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Herro v. City of Milwaukee, 44 F.3d 550, 552 (7th Cir. 1995). The "particular class" requirement "must be met by a group identified apart from the alleged unfair treatment." Nunn v. City of Chicago, 603 F.Supp. 1193, 1196 (N.D. Ill. 1985).

---

[5] The plaintiffs also make fleeting reference to substantive and procedural due process violations in their complaint. Defendant PHA has pointed to HUD regulatory provision 24 C.F.R. §982.202(c) which states, "An applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs. The preceding sentence does not affect or prejudice any right, independent of this rule, to bring a judicial action challenging a PHA violation of a constitutional or statutory requirement." The plaintiffs have failed to respond to this provision or make any other references to its due process claims in her subsequent briefs. Therefore, the court will dismiss those claims without further discussion.

In this case, the plaintiffs argue that they belong to a class of persons on the PHA waiting list who did not commit bribery and were denied their due place on the waiting list in favor of those persons who did commit bribery. Thus, the plaintiffs contend that the class is identifiable because of the unfair treatment that resulted - being awarded, out of turn, a higher position on the list or the next available voucher. This is in direct opposition to the requirement that the class be identifiable apart from the unfair treatment. The plaintiffs claim membership of a class that did not come into existence until the employees of the PHA allegedly took bribes. Accordingly, there exists one classification of persons - all applicants for Section 8 benefits and the plaintiffs have failed to allege intentional discrimination on the basis of membership in an identifiable group. Therefore, plaintiffs' equal protection claim fails and is due to be dismissed.

## V.    Conclusion.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___2ⁿᵈ___ of September, 2003.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

F:\WPDOCS\Coogler\CLERK2\Marlena\OPINIONS\Moore v. Thomas, CV-02-CO-1352-S, Motion to Dismiss.wpd